Good morning, Your Honors. Counsel for Petitioner, Siranush Demirchian. May it please the Court. Your Honors, in this case, I will start with a key issue, which is the report, the overseas investigation regarding the argument bureau. In this case, Your Honor, the report mentions that it was residential buildings, residential apartments, and on the first level there were businesses and none of them had heard about this bureau. And based on that, the government is concluding that it did not exist. First of all, just from an argument standpoint, just because there are residential offices in the building does not mean the person was not working out of a residence, does not mean everybody around there, the businesses and the residents, had to know about this entity. So based on... But the petitioner has the burden of proof. Isn't that correct? Well, that's correct. But you can't prove it by a negative pregnant. Your client has to show that there was no substantial evidence, you know, by something compelling. You're just saying that while the I.J. found what was found, there could have been a contrary conclusion. Is that your position? Well, Your Honor, with all due respect, the I.J., that's why there's due process protections. The I.J. had to find out if the source of the information, which is not necessarily the agents who drove there, but the foreign individuals who gave that information, were reliable, who were these individuals, how did they, what questions were asked, and so forth. And also, Your Honor, respondent did have, well, petitioner in this case, did have a chance to provide rebuttal testimony, and she did provide a letter indicating that one 749 and 750. So that doesn't mean it was not rebutted, that document. And that's the key document that I think created doubt in the I.J.'s mind. There's also a problem with false medical reports. What do you do about that? Well, regarding the false medical reports, Your Honor, basically, in this case, they provided an email from the hospital indicating that the hospital had changed its name, that the record was authentic. So counsel for petitioner did take the next step of trying to rebut the overseas report regarding the medicals. At what point do we have to trust the I.J. who resolves the question as to whether or not this investigative document gathering entity did exist, or whether the medical documents were valid? I mean, I understand you've rebutted, but that doesn't mean the I.J. has to believe the rebuttal. That's correct, Your Honor, but the I.J. has to state under soto alarte why she does not believe the rebuttal, exactly why she's accepting one set of documents and not accepting the other set of documents, give the respondent in the case, who was the petitioner at the present time, a chance to explain why the email says one thing and the document says another thing, and that was not done in this case as well. I think the I.J. is giving more evidence, investigation, than she is to the petitioner's rebuttal documents. What do you do about the husband who, when he comes in with Armenian passports, he says that they're false passports and he's not Armenian, but the forensics say those are valid, not false passports. What do you do with that? Well, Your Honor, with regard to that, that's obviously a good question. Basically what I would say is, in this case, first of all, the petitioner, the lead asylum applicant is Siranush Demirchan. It's her case that governs, not the husband's. Second, it's a pre-real ID case, so assuming he had made that claim and they were real Armenian passports, it does not mean that, although it does not mean necessarily that she is not from Georgia because she did present the birth certificate, and the birth certificate was never found, incidentally, to be inauthentic. Just the authentication of the birth certificate through this argument bureau was claimed to be inauthentic, but the birth certificate itself was never found. Was it an actual birth certificate or just a record of the birth? It was a birth act registration, which I'm more familiar with Armenian laws, but in general that's stronger than the birth certificate because it's directly from the registry, and in this case... But this one came from Moscow, is that right? That's correct. Yeah. But in this case, Your Honor, the document was sent to FDL as well. FDL did indicate that they couldn't make a clear conclusion, however, they did indicate that there was no evidence of alterations or anything on the birth certificate, so that should be given... There was, however, an alteration on the passport, right? I think it was the mail... That's correct. ...indicated that somebody else affixed his picture to the passport, is that correct? That is correct. So what are we to make of that? Well, under this circuit's case law, Your Honor, if somebody uses false documentation or fraudulent documentation to flee their country, that's not necessarily undercutting the adverse credibility. You don't read the case the same way I do, I guess. If it's pre-real ID, Your Honor, in this case it's a pre-real ID, it doesn't go to the heart of the claim that they used the false... But the whole claim is based upon your client's identity and where they came from, and if the documents that verify that are false, how can that not go to the heart of the claim? Well, the identity, again, is... It could be three different petitioners with three different identities. It's the lead asylum applicant's identity that she needs to prove at this point. Later on, and we would argue that based on her credible testimony, and again, the adverse credibility finding should be overturned for the reasons we have stated with regard to the report, based on her credible testimony and the fact that the birth certificate has not been refuted. And incidentally, the witness, the IJ said former nationality showed Russia, but I looked it up and I'm familiar with it. In the INA, nationality is defined as prior allegiance to a state, and I have had clients who were born in Armenia, became Russian citizens, and on their naturalization certificate it indicated former country of nationality, Russia, not Armenia, because that was their former country of nationality. And the IJ found that not credible. That does not mean the individual was not born in Georgia or did not know. So you're saying this is a common confusion and then not to create any credibility issues? It's not even a confusion. The IJ was confused that former country of nationality meant country of birth, which is not true. And to make sure I understand what the colleague you just had, are you saying that we can't consider problems with respect to the, I guess it's the husband's citizenship and where he came from, we can't consider that in deciding whether the lead petitioner's claim should be denied? Your Honor, I'm stating that the judge is entitled to look at all the evidence, but the husband's, the fact that the husband, let's take the worst case scenario, may have been a citizen of Armenia, born in Armenia, but the fact that Ms. Demirjian is claiming that she was born in Georgia and is from Georgia, I don't think necessarily should be given any less weight. The fact that, I mean, she has her identity documents, which have not been refuted, is our argument. And the fact that he is, first of all, the passports, Your Honor, they claim that it was not altered in genuine passports. It does not mean that the person had citizenship in Armenia, which he claims until today that he did not have. It just means, and he even indicated, he does not know, the passports were not obtained directly by him from the passport bureau. He had gone through different machinations to get those passports. He could get a passport from Armenia without being a citizen of the country? I hate to say it, but with money, anything is possible in Armenia, Your Honor, and in a lot of these Eastern Bloc countries. So, yes, that is possible. Your Honors, I would like to reserve the remainder of my time. Your time, okay. All right. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court, my name is Jessie Carlson, and I represent the government in this case. Your Honors, I'm going to start by pointing out that Ms. Demirjian has received substantial judicial review of her case. She's had representation throughout this process. She had numerous hearings before the immigration judge and then judicial review by the board in this case. As you know, this But that's true for any of these cases. Right, right, Your Honors. This really, what it really comes down to is that Ms. Demirjian has not met her burden of proof, either for asylum or for her petition for review. Unlike counsel's representations here indicating that there is no dispute about Ms. Demirjian's identity, in fact, there is quite a bit of dispute as set forth in the IJ's decision. As you know, administrative findings of fact by the IJ are conclusive, or by the agency are conclusive unless a reasonable adjudicator can indicate that they are compelled to conclude to the contrary. And in this case, Ms. Demirjian does not show that the evidence compels a contrary conclusion. She's offered no compelling evidence to conclude that she is indeed credible. In fact, here the IJ set forth a legitimate basis for her conclusion that her family and that she failed to establish their identities because the testimony and the evidence were inconsistent for the first part. And then in addition to that, the IJ was faced with essentially a mountain of documentary evidence that, for the most part, was determined to be fraudulent. And if it was not determined to be fraudulent, it was determined to be questionable at best. Well, determined to be fraudulent by the government investigators. They then present evidence to contradict what the IJ believes the government investigators. Your Honor, what happened here is, yes, the IJ did obtain reports from the government investigators who essentially provided, undermined some of the evidence that had been set forth and gave the petitioner in this case, Ms. Demirjian, the opportunity to go back and try to come up with more solid and reliable evidence. She was put on notice very early in this case that there were issues, that there were issues that the IJ was looking at. The IJ continued this case many times and asked whether or not she needed more time to come up with more solid evidence. And in fact, I think about six years passed. And kind of looking at some of the documents that were set forth, the first thing, the majority of the documents that were provided were obtained from this advocacy group. That may or may not exist. The government did simply put forth some evidence questioning that Ms. Demirjian had a burden and could have, you know, demonstrated that this organization did exist. But even if it did, there's no evidence as to where, if it were a legitimate organization, where they got these documents, the methods they used, who they spoke to, you know, anything to validate the materials they set forth. And that So in effect, your opposing counsel suggests that in certainly almost all of these points that because of the extensions, there was an opportunity on behalf of the petitioners to bring documents to buttress their claims. They brought documents from the government's perspective. The provenance of the documents was not at all clear. And the burden of proof is on the petitioners. And therefore, the finder, in fact, is not compelled to overturn the IJ's credibility determination. Is that essentially the government's case? Yes, yes, your honor. There is no compelling reason here to do that. The IJ has the discretion in this case. And then, of course, the board did affirm the IJ's decision here to assess and weigh all of the evidence presented to her. And in this case, you know, she was very reasonable in the way that she assessed this evidence. And she did, there's even evidence that was set forth by, I think it was INS at the time, there was a record of sworn statement that highlighted an inconsistency in the testimony and had some other information indicating that Mr. Mershian's husband was from Armenia. The IJ did not give that much weight and said because he wasn't willing, the husband wasn't willing to sign that statement, you know, that evidence was not given as much weight. So this isn't a situation where there was bias or that the IJ was being unreasonable in her assessment of this material. What you had was information that concluded that perhaps these people are from Armenia, some indication from Georgia, and an inconsistent testimony throughout. When you kind of pare it down to what documents that the IJ had to look at that were even reliable, you really don't have, there's really nothing there. I'm guessing counsel suggested, and perhaps just in a general sense, that in certain parts of the world there, that money can get you whatever you want. Was there any evidence in this record that suggested that any of the documents that were produced, either by the government or by the petitioners, were in fact false and had been purchased from fraudsters? I mean, you know, there's testimony by the petitioners here that the passports, the Armenian passports were obtained illegally. The government report here says that the passports were in fact real Armenian passports, but they had been altered, which I think can happen with many of these documents. And so in fact, you know, there are questions surrounding all of this. And that's really what this comes down to, is that in making this credibility determination, the IJ was faced with so many questions and no solid, reliable evidence. And the burden simply had not been met. And that's really the bottom line here. Ms. Demircian bore the burden to show and demonstrate her identity, and she simply failed to do so after being given many years and many opportunities. I think that the latest, there was one document set forth toward the end of the proceedings that was a report from Abkhazia about, from a housing authority. Now, again, after many years, everything that she and her family came up with, and if they were able, and there's no evidence as to where that document came from, did that come from the agency, you know, the record is unclear. So everything has been called into question here. And the issue is that even if that document were reliable, everything else is suspect. And after all of those years, no affidavits were set forth demonstrating all the efforts taken by the family to obtain this documentation. And there's a number of things they could have done, and they simply didn't do it, Your Honors. And so the IJ's adverse credibility determination is indeed, it is supported by substantial evidence here. And so the government requests that this court make that conclusion in this case. Any other questions? Thank you very much. Thank you, Your Honors. Counsel, you have a little bit of time left. A minute and 32 seconds. I'll try to be as fast as possible, Your Honor. In this case, the compelling reason, Your Honor, is that there's credibility case law in this circuit for pre-real ID cases. And that says that if the applicant provided entirely consistent testimony regarding her claim, the persecution, the beatings, and the torture she suffered, or persecution, I should say, the fact that they used fraudulent documents to escape the country and the government has does not undercut, under Akinmada progeny, does not undercut the credibility of the respondent necessarily. It does compel a finding. Clearly, it's one of the factors that the IJ is entitled to consider, is it not? Well, Your Honor, the IJ is entitled to consider it, but in light of the record as a whole, cannot use that sole basis to deny it. So you're saying that, for example, the passports. Everybody admits the pictures were fraudulent. It's a key document. You're saying that because of the nature of things over there, that you really can't put much store in that. But on the other hand, you've got to put store in the other documents that you produce. How does that work? Well, Your Honor, I'm saying that the government is indicating there's no affidavits, there's no testimony about how the documents were obtained, the rebuttal documents. But there's also no details about how the government agents questioned and obtained their documents. So the applicant is handicapped already, with one hand behind the back, having fled the country. And essentially, everything is weighing against the applicant, even though she provided testimony that was consistent with regard to her asylum application, regarding the heart of the claim. There were no inconsistencies, which would compel a finding. Thank you very much. We appreciate both your argument. The case just argued is submitted.
judges: Fletcher, Smith, Watford